```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


THOMAS MULLINS                    :    CIVIL ACTION
                                  :
          v.                      :
                                  :
GERALD ROZEM, et al.              :    NO. 11-2504
```

ORDER

AND NOW, this 27th day of December, 2011, upon consideration of the Petition for Writ of Habeas Corpus (Docket No. 1), the Report and Recommendation of United States Magistrate Judge Timothy R. Rice (Docket No. 12), and the petitioner's Objections to Magistrate Judge Rice's Report and Recommendations (Docket No. 13), IT IS HEREBY ORDERED that:

    1. The Report and Recommendation is APPROVED and ADOPTED;

    2. The petitioner's objections are OVERRULED;

    3. The Petition for Writ of Habeas Corpus is DENIED;

    4. A certificate of appealability SHALL NOT issue, as the petitioner has not made a substantial showing of the denial of a constitutional right;

    5. The Clerk of Court shall mark this case CLOSED for statistical purposes.

    The Court conducted an independent review of Mullins's petition for writ of habeas corpus, the respondent's answer, the

petitioner's reply, Judge Rice's Report and Recommendation, and the petitioner's objections to the Report and Recommendation.

In his Report and Recommendation, Judge Rice divides the petitioner's broad attacks into twenty-two separate claims and then analyzes each. The Court writes only with respect to two minor points on the claims identified in the Report and Recommendation as claims three and fifteen.

First, Judge Rice appears to have inadvertently omitted a discussion of claim fifteen. Thus the Court addresses it here. In 2003, Mullins pled guilty to four charges of offenses of a sexual nature for behavior with his step-daughter, B.C., over the course of several years. In claim fifteen, Mullins argues that his trial counsel was ineffective because she induced his guilty plea by inadequately preparing for trial. This claim was never raised by the petitioner in his state court challenges. See Counseled Br.; PCRA Pet.; Am. PCRA Pet.; 4/30/08 Tr. It therefore falls into the category of claims addressed in Judge Rice's Report and Recommendation at I.A., "Claims Mullins Never Raised in State Court." For the reasons described in that section, claim fifteen is procedurally defaulted and unexhausted, and therefore not subject to review by the Court.

Judge Rice concludes that the petitioner's third claim, that his guilty plea was involuntary because it was induced by the prosecutor's threats to his family, was waived. The Court

notes that even if this claim were properly exhausted, it is without merit.[1]

The petitioner's trial began on the morning of November 12, 2003 with the testimony of the alleged victim, his step-daughter, B.C.  B.C. was emotionally distraught and initially stated that she would not testify against the petitioner. 11/12/03 Tr. at 79.  The trial court held a recess so that she could speak to her guardian ad litem and then again so that her guardian ad litem could be present when she re-took the stand. Id. 82-85.  After this recess, B.C. began to respond to the district attorney's questions.  As she started to describe "touching" in "inappropriate places" by her step-father, the petitioner interrupted the trial to request that he be allowed to plead guilty.  Id. 102-03.

The trial court engaged in a plea colloquy with the petitioner.  The court explained the rights the petitioner was forgoing by pleading guilty.  Id. 105-109.  The court then asked "Has anyone forced you to plead guilty or threatened you to plead guilty?"  The petitioner replied "No."  Id. 111.  The court reviewed the charges against the petitioner and the maximum and

---

[1] The state court deemed this claim waived and did not address it.  Ct. App. Op. II at 8.  "When . . . the state courts do not adjudicate a claim on the merits, and that claim is presented properly to a federal court in a petition for a writ of habeas corpus,. . . . [a court should] exercise de novo review." Lark v. Sec'y Pa. Dept. of Corrections, 645 F.3d 596, 618 (3d Cir. 2011).

minimum sentences carried by those charges.  Id. 111-114.  The district attorney read into the record the facts she would prove and the court asked the defendant if those facts were accurate.  Mullins corrected B.C.'s age, but otherwise agreed that the D.A.'s description of numerous instances of sexual contact with his step-daughter over several years was accurate.  Id. 121-22.  The court then asked "And you're pleading guilty, sir, here today before me because you are in fact guilty of these crimes?"  The petitioner replied "Yes."  Id. 122.  The court found that the petitioner made "a knowing, intelligent, voluntary decision to waive his rights" and that "there are sufficient facts to substantiate" the charges against him.  Id. 122.  At his sentencing hearing, the petitioner testified that he pled guilty so as to spare B.C. any more pain.  4/30/08 Tr. at 50.

　　　　The petitioner first raised a claim that he had pled guilty because he felt threatened by the district attorney in his PCRA petition.  PCRA Pet. 4.  At a hearing on this PCRA petition, Mullins testified that he overheard a conversation between the district attorney and the Children and Youth Services ("CYS") worker in the stairwell outside of the courtroom during the recess before B.C. re-took the stand.  4/30/08 Tr. at 56-57.  During that conversation, the D.A. and CYS worker discussed whether the petitioner's wife had influenced her daughter's testimony and their options if that had occurred.  Id.  This

included criminal charges against his wife and possibly loss of custody of her children.  Id.  The petitioner's trial counsel confirmed that Mullins told her about this conversation on the day of the trial.  Id. 75-76.  She advised him that his wife needed to speak to her lawyer.  Id. 76.  They did not discuss this conversation in the context of a guilty plea.

The district attorney testified that the petitioner's wife had made a comment to B.C. on the first day of trial suggesting that she did not want her daughter to testify.  Id. 94-95.  The D.A. then had a private conversation with the CYS worker about the need to ensure that the best interest of B.C. and her siblings were being protected.  Id. 96-97.  The D.A. testified that neither the defendant nor his wife were present or nearby during the conversation.  Id.  As described above, the trial reconvened, B.C. began to testify, and the petitioner interrupted to plead guilty.

"A habeas petitioner challenging the voluntary nature of his or her guilty plea faces a heavy burden." Zilich v. Reid, 36 F.3d 317, 320 (3d Cir. 1994).  A plea colloquy designed to uncover hidden consequences of a guilty plea will not lightly be sight aside on collateral attack.  Id.  In addition, a court must presume that a state court's determinations of factual issues are correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  In order to be valid, a guilty plea most be

both knowing and voluntary.  <u>Parke v. Raley</u>, 506 U.S. 20 (1992).  If induced "by promises or threats which deprive it of the character of a voluntary act" a guilty plea is open to collateral attack.  <u>Machibroda v. United States</u>, 368 U.S. 487, 493 (1962); <u>Zilich</u>, 36 F.3d at 321.  For example, a plea may be involuntary if induced by counsel's threats to withdraw if the defendant does not plead guilty or if defense counsel makes misleading statements about the sentencing consequences of the plea.  <u>Dickerson v. Vaugh</u>, 90 F.3d 87, 91 (3d Cir. 1996).

In this case, the trial court engaged in a thorough plea colloquy to ensure that the petitioner's plea was voluntary.  The petitioner testified that his plea was not induced by threats and that he was pleading guilty because he was, in fact, guilty of the crimes alleged.  In addition, the petitioner testified at his sentencing hearing that his plea was voluntary and entered to prevent B.C. from having to testify.  It was not until his post-conviction attack on his guilty plea that the petitioner claimed he pled guilty because he overheard what he interpreted to be a threat against his wife and family.  There is no evidence that this conversation was intended by the district attorney to be a threat against the petitioner if he did not plead or that the petitioner interpreted it that way at the time.  The state court found that the petitioner was pleading guilty voluntarily and because he was guilty.  Moreover, the transcripts from the trial

show that the petitioner pled guilty only once it became clear that B.C. would testify against him.  The petitioner has not presented sufficient evidence to overcome the heavy burden that, as he testified to in his plea colloquy, his plea was entered into voluntarily, and not as a result of any threat against him or his family.

The Court notes that Mullins's objections to Judge Rice's Report and Recommendation does not specify which claims he disputes.  He disagrees with Judge Rice's characterization that he had counsel during his direct appeal.  The petitioner asserts that he was not consulted by or represented by amicus counsel who participated in his direct appeal.  To the extent that this is a broad attack on the constitutional sufficiency or effective assistance of his amicus counsel, it is newly raised at this point and therefore not a cognizable claim.  Mullins's other objections are broad attacks on his guilty plea which were contained in his petition and considered by Judge Rice.

Accordingly, the Court overrules petitioner's objections and approves and adopts the Report and Recommendation.  Mullins's petition for a writ of habeas corpus is therefore dismissed and denied.

                                      BY THE COURT:

                                      /s/ Mary A. McLaughlin
                                      MARY A. McLAUGHLIN, J.